# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 3:19-CR-04 |
| v. | (MANNION, J.)<br>(SAPORITO, M.J.) |
| DAVID SISK, | |
| Defendant. | |

## MEMORANDUM

This matter is before the court on the emergency motion for release of high-risk inmate (Doc. 36) filed by the defendant, Davis Sisk, a federal pretrial detainee housed at the Lackawanna County Prison (LCP).

On January 15, 2019, Sisk was charged in an indictment with possession with intent to distribute 40 grams or more of fentanyl, in violation of 21 U.S.C. § 842(a)(1); possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 842(a)(1); possession with intent to distribute cocaine, in violation of 21 U.S.C. § 842(a)(1); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and possession of a stolen firearm, in violation of 18 U.S.C. § 922(j). (Doc. 1). On February 15, 2019,

1

he appeared before the undersigned United States magistrate judge for an initial appearance and an arraignment. He entered a plea of not guilty to the charges in the indictment. At that time, he waived a detention hearing with the right to request a hearing if his circumstances changed, we ordered that Sisk be detained pending trial, and he has been in custody since. (Doc. 15). On March 31, 2020, he filed the instant emergency motion for release of high-risk inmate. (Doc. 36).

In his motion, Sisk asks that we release him because the risk of being confined in a large group during the COVID-19 global pandemic, places him at substantial risk because he is asthmatic. In his motion, Sisk attached a certificate of non-concurrence (Doc. 36, at 6) certifying that the assigned assistant United States attorney does not concur in his motion. A status report was filed by government counsel stating that the issue of release was not resolved and that a hearing is requested. The government filed a brief in opposition to the defendant's motion (Doc. 38). We conducted a telephonic hearing, with the defendant's consent, on April 17, 2020. The motion is ripe for a decision.  For the reasons set forth herein, we will deny the motion.

## I.    Statement of Facts

As indicated above, Sisk has been charged by an indictment with the charges listed. If convicted, he faces a maximum term of imprisonment of greater than 10 years. At the telephonic detention hearing held on April 17, 2020, the parties agreed that the presumption under 18 U.S.C. § 3142(e)(3) applied.[1]

The government proffered that, on August 10, 2018, a search warrant obtained in Luzerne County, Pennsylvania, was executed on a residence utilized by Sisk. After he was Mirandized and advised of the possible consequences should officers be harmed by the presence of fentanyl in the residence, Sisk informed the officers that there was fentanyl in a backpack located in the bedroom where Sisk was found at the beginning of the search. After proceeding to Sisk's bedroom, the investigators located a backpack containing the following items: (1) 20 sublingual suboxone strips; (2) a large bag of rice that contained 320 prepackaged heroin packets; (3) 36 grams of pure fentanyl; (4) 36.5 grams of raw heroin; (5) plastic sandwich baggies; (6) inositol – which is

---

[1] The rebuttable presumption in 18 U.S.C. § 3142(e)(3) reflects a Congressional finding that drug trafficking is a danger to the community and drug traffickers pose special flight risks.

commonly used to "cut" drugs; and, (7) a pair of scissors. Additional drugs, packaging materials, $8000 in cash, and additional evidence were in the top drawer of a dresser in the room. Police also found a box of .45 caliber bullets in plain sight on a table next to the bundled money in the bedroom. Officers asked Sisk whether there was a firearm and if so, where it was located. Sisk told the officers to look under the bed in his room. As a result, a Springfield XD .45 caliber pistol was discovered under Sisk's bed box spring. Further investigation determined that the firearm was reported stolen from West Wyoming Borough, Pennsylvania on January 9, 2017. (Doc. 38, at 2-3). Further, the government proffered in its brief and at the hearing that LCP has reported no positive COVID-19 cases among its inmate populations and only one corrections officer has tested positive. (Doc. 38, at 8-9).

At the hearing, defense counsel acknowledged the application of the presumption and stated that, ordinarily, Sisk would not be eligible for release. He proffered that Sisk has a history of asthma which makes him more likely to have serious complications from COVID-19. He has not been diagnosed with COVID-19, nor has he exhibited any symptoms thereof. He also informed the court that Sisk is the subject of a state detainer and if we were to release him to that detainer, he would request

that Sisk serve that time in a state correctional facility which he posits is better equipped to handle the impact of COVID-19 than in the LCP. Further, he proposed that Sisk be released to his father's home on home confinement with electronic monitoring. We did not hear from Sisk's father that he consents to his son living with him under those terms.

Upon questioning by the court, Sisk, age 31, testified that he was diagnosed with asthma as a child. He has not had the need to visit a doctor about his asthma or to visit a hospital since his childhood. Further, he used a nebulizer as a child only. He has no use for an inhaler while he has been an inmate at LCP because he is not exercising. He takes no prescribed medication.  He has no other medical condition.

We have the benefit of a pretrial services report dated February 7, 2019, which reflects a serious criminal history that includes multiple drug related convictions and a charge of flight to avoid apprehension. Moreover, the instant offense occurred when Sisk was released on supervision. In the report, the probation office has recommended that Sisk be detained.

The Bail Reform Act requires that we consider the following factors in determining whether to release a defendant:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, . . . a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

After considering these factors and the information presented at the detention hearing, we conclude that Sisk be detained pending trial because no conditions or combination of conditions of release will

reasonably assure Sisk's appearance and the safety of the community.
We also find that Sisk did not produce that quantum of evidence
necessary to overcome the presumption. The reasons for detention
include the following: the weight of evidence against the defendant is
strong; he is subject to a lengthy period of incarceration if convicted; his
prior criminal history; his participation in criminal activity while on
probation, parole, or supervision; that drug trafficking is inherently a
danger to the community; that drug traffickers inherently pose special
flight risks; and that the rebuttable presumption applied to this case and
that Sisk had not rebutted the presumption that detention was necessary
to assure his appearance and to protect the community.

## II.   Discussion

### a. COVID-19 Global Pandemic

We are mindful of the unprecedented magnitude of the COVID-19
pandemic and the extremely serious health risks it presents.[2] "COVID-
19 is the infectious disease caused by the novel coronavirus." *United
States v. Roeder*, ___ Fed. App'x ___, 2020 WL 1545872, at *1 (3d. Cir.

---

[2] World Health Org., *WHO Characterizes COVID-19 as a Pandemic* (Mar.
11, 2020), https://www.who.int/emergencies/diseases/novel-coronavirus-
2019/events-as-they-happen.

Apr. 1, 2020) (per curiam). We are also cognizant that the President of the United States has declared a national emergency and the Governor of Pennsylvania has declared a state of emergency and issued a stay-at-home order through April 30, 2020, and now extended to May 8, 2020. Further, the Governor has ordered all schools to remain closed for the remainder of the 2019-2020 academic school year. We also recognize that public health officials have strenuously encouraged the public to practice "social distancing," to hand-wash and/or sanitize frequently, and to avoid close contact with others—all of which presents challenges in detention facilities. *See Roeder*, 2020 WL 1545872, at \*2; *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at \*2 (D. Md. Mar. 17, 2020).

### b. *Conditions of LCP*

Sisk contends that it is difficult or impossible for those inmates most at risk, like himself, to engage in social distancing and self-quarantine precautions as recommended by the Centers for Disease Control and Prevention. Lawyer visits have been limited to meetings through glass making the preparation of a defense difficult, and potentially impossible.

The government concedes a recent disclosure that a guard at LCP recently tested positive for the COVID-19 virus, which resulted in

8

inmates being placed in lockdown, permitted only to leave their cells for showers, phone calls, attorney visits (through glass windows), and video teleconferencing for court proceedings. The government proffers in its brief that LCP has reported no other staff member or inmate has reported flu-like symptoms. (Doc. 38, at 8). At the April 17, 2020, hearing, the government proffered that as of that date, no other inmate or corrections officer at LCP have tested positive for the coronavirus. We further take judicial notice of recent policies and procedures adopted by LCP to prevent or limit the spread of COVID-19 within the prison. *See Shakur v. Costello*, 230 Fed. App'x 199, 201 (3d Cir. 2007) (per curiam) (taking judicial notice of county prison procedures). Under these new policies and procedures, LCP has suspended contact visits, regular visitation, and visitation from volunteers, including religious leaders. It has implemented aggressive sanitation programs and suspended all programs that utilize "outside" employees. It has prohibited individuals other than prison and medical staff to proceed any further than the reception area. It has limited attorney visits with inmates to meetings through a glass partition in a lawyer visitation room unless written permission is granted by the warden or the deputy warden. It has cancelled all conferences and out-of-county training. It has provided for

9

weekly contact with officials from the state department of corrections. It has posted educational flyers in the blocks and in the reception area. It has also implemented body temperature screening checks for all employees and lawyers as they enter the facility. *United States v. Mendoza,* No. 5:20-mj-00011, 2020 WL 1663361, at *3 & n.4 (M.D. Pa. Apr. 3, 2020).

### c. *18 U.S.C. § 3142(i)—Temporary Release*

To the extent that Sisk seeks relief under 18 U.S.C. § 3142(i) which allows a judicial officer, by subsequent order, to permit the temporary release of a person to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or another compelling reason, we are not persuaded that he is entitled to release. We do not find that his heightened health risks constitute "another compelling reason" to justify his release.

Section 3142(i) constitutes a limited safety valve provision, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i). *See United States v.*

*Buswell*, No. 11-CR-198-01, 2013 WL 210899, at \*5 (W.D. La. Jan. 18, 2013) (collecting cases). The Court must carefully and impartially apply the proper legal standards that govern an individual's particular request for relief. *Roeder*, 2020 WL 1545872, at \*3.

Until recent events spawned by the COVID-19 global pandemic, defendants seeking release under § 3142(i) generally did so because it was necessary to prepare the person's defense. Those courts finding "another compelling reason," however, typically granted release "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Lee*, No. 19-CR-298 (KBJ), 2020 WL 1541049, at \*3 (D.D.C. Mar. 30, 2020) (quoting *United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at \*2 (E.D.N.Y. Mar. 20, 2020)); *see also United States v. Scarpa*, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS, which could no longer be managed by correctional authorities); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D.P.R. 2002) (permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the

United States Marshals Service refused to take custody of him until his wounds closed).

A defendant is not entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation. *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at \*3 (D. Kan., Mar. 25, 2020). We must make an individualized determination as to whether COVID-19 concerns are compelling in a particular case to justify temporary release under § 3142(i). *Id.* A decision on a motion seeking release under § 3142(i) entails an informed judgment assessing both individual health concerns and broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary."

*Id.* at \*3.

We have already discussed our reasons for Sisk's detention above. Sisk states that his history of asthma should justify his release considering the coronavirus pandemic. While the court remains sympathetic to Sisk's concerns regarding the possibility of health complications caused by the COVID-19 virus, "[s]uch speculation does not constitute a 'compelling reason' for temporary release." *United States v. Loveings*, Cr. No. 20-51, 2020 WL 1501859, at *3 (W.D. Pa. Mar. 30, 2020); *see also United States v. Pritchett*, CR 19-280, 2020 WL 1640280, at *3 (W.D. Pa. Apr. 2, 2020) (despite being sympathetic to defendant's medical conditions, including a diagnosis of asthma, speculation concerning possible future conditions in jail does not constitute a "compelling reason" for temporary release.); *United States v. Jones*, No. 2:19-CR-00249-DWA, 2020 WL 1511221, at *3 (W.D. Pa. Mar. 29, 2020) (holding that, while the defendant suffered from hypertension, sleep apnea, and asthma, and it is true that individuals with respiratory issues are at higher risk for COVID-19, his present health conditions were not sufficient to establish a compelling reason for release in light of the danger to the community posed by his release and the efforts undertaken at the jail to combat the spread of the virus) (citing *United States v. Davis,* 2020 U.S. App. LEXIS 9987 (3d Cir. Mar. 20, 2020)). The state of the

record reflects that the defendant's asthma related issues seem to be under control.

The mere presence of the virus, even in the detention setting, does not automatically translate to the release of a person accused. *United States v. Williams*, No. PWG-19-8, 2020 WL 1643662, at \*2 (D. Md. Apr. 2, 2020) (denying defendant's motion even where at least five inmates had tested positive for COVID-19 and defendant suffered from allergies and asthma); *United States v. Bilbrough*, No. TDC-20-0033, 2020 WL 1694362 (D. Md. Apr. 7, 2020) (affirming magistrate judge's denial of motion by defendant who suffered from diabetes); *United States v. Williams*, No. PWG-13-544, 2020 WL 1434130 (D. Md. Mar. 24, 2020) (denying a 67-year-old defendant's motion); *United States v. Penaloza*, No. TDC 19-238, 2020 WL 1555064 (D. Md. Apr. 1, 2020) (denying motion of defendant who suffered from a heart murmur); *United States v. Jefferson*, No. CCB-19-487, 2020 WL 1332011 (D. Md. Mar. 23, 2020) (denying motion of asthmatic defendant). Thus, we are left to speculate whether Sisk's continued incarceration would likely increase his risk of harm. However, mindful of the rapidly evolving conditions in prisons throughout the nation as well as the COVID-19 pandemic, we will entertain a renewed request for release if at some point in the future it

becomes clear that there are compelling reasons to justify the defendant's release. *United States v. Sanchez*, No. 1:19-cr-00152, 2020 WL 1814159 *7 (M.D. Pa. Apr. 9, 2020) (citing *United States v. Lee*, No 19-CR-298 (KBJ), 2020 1541049, at *7 (D.D.C. Mar. 30, 2020).

## III.   Conclusion

For all of reasons set forth above, Sisk has failed to demonstrate a compelling reason under 18 U.S.C. § 3142(i) to justify a release from detention. Therefore, his motion is denied.

An appropriate order follows.

***s/Joseph F. Saporito, Jr.***
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: April 23, 2020